## Axelrod v. Lakeshore Motor Freight Company

*Evans, Ivory & Evans*, for plaintiff.

*George Y. Meyer*, for defendant.

*Joseph D. Ripp*, for petitioner.

LEWIS, J., June 28, 1954.—The matter comes before the court on a petition filed by Lillian Axelrod to compel the amendment of a complaint filed by Beryl L.

Axelrod, administratrix of the estate of William M. Axelrod, deceased, to include petitioner as a party entitled to recover damages by reason of the death of her son, William M. Axelrod.

In the answer filed by Beryl L. Axelrod, she neither affirmed or denied that Lillian Axelrod was dependent for support on her son, William M. Axelrod. However, at the argument before the court en banc, it was admitted by counsel for Beryl L. Axelrod that Lillian Axelrod, the mother of the deceased, had been receiving support from her deceased son at the time of his death.

The widow was appointed administratrix of her husband's estate. Suit was instituted at the above term and number to recover on behalf of the widow under the Wrongful Death Act and on behalf of the estate under the Survival Statute.

Counsel for the widow contends that where a deceased husband has been survived by a widow no cause of action whatsoever exists in the mother of the deceased under the Wrongful Death Act, and requests the court to dismiss the petition to compel the amendment and to discharge the rule granted upon the plaintiff.

Under the common law and as late as a little more than a century ago, no action would lie to recover damages for the wrongful death of a human being occasioned by the negligent act of another, even though persons in a close relationship with the deceased suffered a pecuniary loss.

Due to the absurdity of a situation whereby a defendant was called upon to pay damages for even the slightest injuries because of a negligent act and not called upon to pay damages for causing a death, legislation was introduced near the middle of the Nineteenth Century to modify or abrogate the severity of the common law and to furnish a remedy for the bereaved and often destitute family.

In 1846 the English Parliament led the way by passing the Fatal Accidents Act, or what is more commonly known as Lord Campbell's Act. This was followed by the passage of similar acts in many of our States, including Pennsylvania.

See 24 St. John's Law Review 236.

The Federal Government also recognized the necessity of such an act when Congress provided in the Second Employes Liability Act that a husband, wife or next of kin, may maintain an action to recover damages for a wrongful death: Act of April 22, 1908, 35 Stat. at L. 65 (1908), as amended; 45 U. S. C. §51 (1946).

Both the Federal act and the State statutes on this subject proceed on the theory of compensating the individual beneficiaries for the loss of economic benefits which they might reasonably have expected to receive from decedent during the remainder of his lifetime if he had not been tortiously killed: Stutz v. Guardian Cab Corporation, 273 App. Div. 4, 75 N. Y. S. 2d 818 (1947); Tate v. Barry et al., 144 Neb. 517, 13 N. W. 2d 879 (1944); Northern Indiana Power Company v. West, Administratrix, 218 Ind. 321 (1941), 32 N. E. 2d 713; In re Lucht's Estate, 139 Neb. 139, 296 N. W. 749 (1941); Armstrong, Admr., v. Berk et al., 96 F. Supp. 182 (1951).

In the case of Tate v. Barry et al., 144 Neb. 517, 13 N. W. 2d, 879, 882 (1944), the court stated:

"A presumption of pecuniary loss exists in favor of one legally entitled to service or support from one killed by the wrongful or negligent act of another."

In the case of Northern Indiana Power Company v. West, Admx., 218 Ind. 321, 327 (1941), 32 N. E. 2d 713 (1941), the court said:

"The damages are limited to the pecuniary loss suffered by those for whose benefit the action may be maintained."

In re Lucht's Estate, 139 Neb. 139, 296 N. W. 749 (1941), the court said:

"We hold that the amount recovered by the personal representative of a deceased, under the provisions of Section 30-810, Comp. St. 1929, as amended by chapter 92, Laws 1919, shall be paid to and distributed among such of the widow, widower and next of kin of such deceased as suffer a pecuniary loss by the death of such deceased."

In re Armstrong, Admr., v. Berk et al, 96 F. Supp. 182 (1951), the United States District Court for the Eastern District of Pennsylvania said:

"Ever since the passage of the wrongful death statute the courts have limited the right to prove damages to persons who have suffered pecuniary loss as a result of death, the pecuniary loss being that loss of support which the persons mentioned in the wrongful death statute have sustained."

The Pennsylvania Wrongful Death Act provides as follows:

"The persons entitled to recover damages for any injuries causing death shall be the husband, widow, children or parents of the deceased, and no other relatives . . . and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy. . . ."

Although the Wrongful Death Statute has been in existence for over 100 years, the law of Pennsylvania on the subject as established by the interpretations of the act by the various courts is not as clear as it might be, because of the many different fact situations that they have been called to pass on.

We can find no case where a dependent mother has made a claim with a dependent wife, so it will be necessary to review the decisions to arrive at a rule of construction in order to solve the problem.

As we understand the facts of the case, it is con-

ceded that the mother claimant was being supported by her deceased son.

Furthermore, there seems to be no doubt that the mother had a pecuniary interest in the life of her deceased son by reason of the legal obligation on him created by law to support her if she is not able to work or maintain herself: Act of March 29, 1803, P. L. 507; Act of April 6, 1905, P. L. 112, sec. 4.

In the case of Kaczorowski v. Kalkosinski, Admr., 321 Pa. 438, 441 (1936), the Supreme Court of Pennsylvania said:

"What is recoverable is the loss of pecuniary benefits which the persons *named in the act* would have received from the deceased had death not intervened." (Italics supplied.)

So in the case of Gaydos et al. v. Domabyl, 301 Pa. 523 (1930), the Supreme Court of Pennsylvania said:

"Before there can be any recovery in damages by one in that relation for the negligent death of another in the same relation, there must be a pecuniary loss."

Therefore, the first requisite necessary in order for a person to recover in a wrongful death action is a pecuniary interest in the life of the deceased.

The second requisite is being a member of a class set forth in the wrongful death statute as entitled to recover, viz., husband, wife, children, parent.

It is conceded here that the mother has sustained a pecuniary loss by the death of her son.

It is obvious that she is a member of the class named in the statute.

Is she entitled to share in the distribution of the fund with the widow or does the fact that the widow is mentioned as belonging to a prior class in the statute preclude the widow from sharing the fund with her?

Under the Intestate Act of Pennsylvania, where there are no children, a parent can share in his or her child's estate, along with the child's widow.

The cases cited by plaintiff are all cases in which the party seeking to make a claim had no pecuniary interest in the life of the deceased.

The case of Lehigh Iron Company v. Rupp, 100 Pa. 95 (1883), involved the claim of a widow and the claim of a father for the wrongful death of the husband and son.

The father entered suit and recovered a verdict although there was no evidence that he received any support from his son.

The Supreme Court held in reviewing the verdict that the father had no right of action, but it was in the surviving widow.

It was clear, however, that the decision was based on the fact that there was no pecuniary loss suffered by the parent due to the son's death.

The court stated on pages 98 and 99:

"If the child was free by age, or emancipation, and living apart from his parents, and in no way contributed to their support, they could not maintain an action, for they suffered no pecuniary loss, and the family relation had been dissolved to the extent of actual separation. But though the child was of full age, if the family relation existed in fact, and the parents had a reasonable expectation of pecuniary advantage from him, they can maintain the action."

The case of Lewis v. Hunlock's Creek & Muhlenberg Turnpike Co., 203 Pa. 511 (1902), held that a widow may recover to the exclusion of children who were over age and not supported by the deceased.

The court, on page 513, said:

"By the act of 1855, supra, the right is restricted to certain relatives and their priority among themselves is defined. They cannot all claim jointly but each class in its own right and its own order. The parents, for example, have no standing at all except in the absence of husband or widow and children. The act first gives

the right of action, and then prescribes the mode of distribution of the sum recovered, but that necessarily means distribution among those entitled to sue. It would be absurd to suppose that in the same sentence the statute meant to give part of the damages to those to whom it had denied the right of action."

If this case means what it seems to say then this would eliminate all others listed after the first supported class even though their entire support came from the deceased and even though such support was provided by statute as in the case of an indigent mother or father.

The case of McFadden v. May, 325 Pa. 145 (1936), while holding that the right of action is exclusive in the persons designated in the order in which they are named, also holds that recovery by the persons bringing the suit is for the benefit of the whole group and each member thereof is entitled to a distributive share under the intestate laws.

The court, on page 153, said:

"The statute, which enumerated the persons entitled to sue, appointed them to represent the family. The plaintiff does not sue for himself alone but as a representative or trustee for those beneficially entitled."

Plaintiff also cites the case of Siidekum, Admr., v. Animal Rescue League, Pittsburgh, et al., 353 Pa. 409 (1946), as a basis for his contention that petitioner is not entitled to recover any part of the distributive share. Justice Stern, in discussing the case, on page 419, made this statement:

"As she left no children, and was survived only by her mother and her husband, he is also the sole person entitled to damages recoverable for her wrongful death."

The justice did not further elaborate on the law on this subject because it was not the main point in the

case, but it is significant to note that all the cases he cites in support of his statement were cases in which claimants had no pecuniary interest in the deceased's life.

In the case of Ditkowsky, trustee, v. Schreiber Trucking Co. et al., 82 D. & C. 319, the court, in an opinion written by Judge Pinola, held that parents were not entitled to share in a wrongful death recovery with the widow because there was no evidence that a family relationship existed or that the deceased prior to his death supported his parents. The inference being if the parents were able to prove that they were being supported by their son, they would be permitted to share in the recovery.

In the case of Armstrong, Admr., v. Berk et al., 96 F. Supp. 182, a mother, who was supported by the deceased son, was permitted to share in the proceeds of a wrongful death recovery to the exclusion of the children who were not supported by the deceased.

We might state that the cases in Pennsylvania in regard to the interpretation of the Wrongful Death Statute seem to arrive at the following conclusion:

1. The right of action is exclusively in the persons designated in the order in which they are named in the act, and if that person refuses to bring the action or is not available, another person belonging to a class named in the act may bring it in the name of the person having the prior right.

2. The person recovering the fund shall hold it as trustee for all others entitled to share.

3. The persons entitled to the fund recovered shall be the persons designated in the Wrongful Death Statute in the proportion they would take decedent's personal estate in case of intestacy.

4. No person named in the Wrongful Death Statute shall receive any of the fund recovered even though they would be entitled to a share under the intestate

law unless they have a pecuniary interest in the life of the deceased.

While we can find no cases in which the sum recovered was distributed between members of two different classes, we have been unable to find a case where members of two different classes each had a pecuniary interest in the life of the deceased.

If the intention of the legislature in passing the Wrongful Death Act was to compensate those in the family relationship who suffered a direct pecuniary loss by the death of the deceased, then there is no reason why the sum should not be distributed among those classes named in the act according to the proportionate share each would be entitled to receive under the intestate act.

In summarizing, we believe it can be safely said that the entire history of the Wrongful Death Statute, beginning with Lord Campbell's Act, indicates the reason for the passage of legislation dealing with this problem was to compensate those who were deprived of economic benefits due to the wrongful death of the decedent.

Those persons in the family relationship with decedent, who had a direct pecuniary interest in decedent's life, suffered a pecuniary loss when that interest was taken away from them by the wrongful act of another.

The Pennsylvania Legislature recognized it would be an injustice not to permit those affected by the wrongful death to be able to redress this wrong and passed the Act of April 26, 1855, P. L. 309, sec. 1, as amended, 12 PS §1602, which provides not only who should have this right of action for the wrongful death if they had a pecuniary interest in the life of the deceased but in what proportion they should take in the event there was more than one person in the family relationship having a pecuniary interest.

To make it clear just who was eligible to share in the proceeds and in what proportion they should take, the legislature determined the persons in the family relationship who should take under the Intestate Act.

We are, therefore, of the opinion that a reasonable interpretation of the act indicates that the legislature intended to have the amount recovered under the Wrongful Death Act distributed among all persons named in the act having a pecuniary interest in the life of the deceased and in the amount each would take if deceased had died intestate leaving the same amount in his estate as that recovered in the wrongful death action.

Pennsylvania Rule of Civil Procedure 2204 provides:

"In addition to all other facts required to be pleaded, the initial pleading of the plaintiff in an action for wrongful death shall state . . . the names and last known residence addresses of all persons entitled by law to recover damages, their relationship to the decedent and that the action was brought in their behalf."

We are of the opinion that petitioner, Lillian Axelrod, having a pecuniary interest in the life of her deceased son and coming within one of the family group classifications set forth in the Wrongful Death Act of Pennsylvania, is entitled to share in the proceeds of any verdict or settlement, and we are making an order in accordance therewith.

### Order of Court

And now, to wit, June 28, 1954, it is ordered and decreed that Beryl L. Axelrod, administratrix of the estate of William M. Axelrod, deceased, amend her complaint filed at April term, 1952, no. 2678, to include Lillian Axelrod, as a person entitled by law to recover damages in the aforementioned action, in accordance with the Pa. R. C. P. 2204.